IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**SONYA QUIÑONES-TORRES**, *et al.*,

    Plaintiffs,

    v.

**RADIATION ONCOLOGY GROUP, PSC**, *et al.*,

    Defendants.

Civil No. 13-1673 (BJM)

## OPINION AND ORDER

Plaintiffs Sonya Quiñones-Torres ("Quiñones"), and her minor son L.L.G.Q. (collectively, "plaintiffs") filed an amended complaint for medical malpractice against Radiation Oncology Group, PSC, Dr. José N. Correa ("Dr. Correa") and his conjugal partnership, Caribbean Imaging and Radiation Treatment Center, Inc. ("CIRT"), Admiral Insurance Company ("Admiral", CIRT's insurance carrier), and other co-defendants. (Docket No. 43). Plaintiffs' claims arise under Articles 1802 and 1803 of the Puerto Rico Civil Code, *P.R. Laws Ann. Tit. 31 §§ 5141-5142*. They seek monetary damages for defendants' alleged negligence in providing medical care to Quiñones. *Id*. Following discovery, including desposition of Quiñones, CIRT and Admiral moved for summary judgment as to all claims, claiming that the causes of action raised against them were time-barred. (Docket No. 70). Plaintiffs opposed the motion. (Docket No. 73-74). CIRT and Admiral filed a reply to the opposition, and the plaintiffs filed a surreply. (Docket No. 80-81). For the reasons that follow, the motion for summary judgment is **denied**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)
2

the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

The factual record is summarized here under Local Rule 56.[1] CIRT and Admiral filed a statement of uncontested facts. (Docket No. 70-10, "Def. St."). Plaintiffs opposed

---

[1] Local Rule 56 requires parties at summary judgment to supply and rebut brief numbered statements of fact, pinpoint-citing admissible record evidence. It "relieve[s] the district court of any responsibility to ferret through the record" in search of genuine factual disputes, *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from making the court do their homework for them. *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). Failing to properly oppose a statement of fact allows the court to deem it uncontested. *Id.*

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)
3

and offered additional facts. (Docket No. 73-1, "Pl. St." and "Pl. Add. St."). CIRT and Admiral opposed the additional facts. (Docket No. 80, "Def. Opp."). Plaintiffs filed a surreply. (Docket No. 81). Both sides offered as evidence excerpts of Quiñones's deposition testimony ("Deposition"). (Docket Nos. 70-2, 73-2).

For purposes of this motion for summary judgment, the court takes the following facts as true. From January 27 to April 5, 2011, Quiñones received thirty-five radiotherapy sessions at CIRT with Dr. Correa, contemporaneous with chemotherapy with Dr. Jiménez. (Def. St., ¶ 6, 12; Exhibit 2 - CIRT's "Patient Data Sheet" at Docket No. 70-3). During the course of the radiotherapy, she felt that the radiation was burning her. She experienced vaginal and anal swelling and discharge, experienced bleeding through her urine, her urine passageway was sometimes clogged with a pus-like substance that burned her urine-hole area, and vaginally discharged "bits and pieces" of her bladder. Her buttocks were burned. She was also diagnosed with and treated for herpes zoster. (Def. St., ¶ 7-9; Pl. St. ¶8-9; Pl. Add. St., ¶ 5-8). She stopped having sexual relations with her consensual partner in February. (Def. St., ¶ 7; Pl. St., ¶ 7).

To Quiñones's best recollection, the swelling and bleeding began approximately by her fifth radiotherapy session in February 2011. (Def. St., ¶ 11; Pl. Add. St., ¶ 1; Exhibit 2 at Docket No. 70-3, p.2). Her urinary bleeding would sometimes stop. (Pl. Add. St., ¶ 2; Deposition p. 106-107). At around her fifth radiotherapy session, she told Dr. Correa that she bled when urinating. Dr. Correa recommended that she sit on cold ice water baths, and continue treatment. (Pl. Add. St., ¶ 2, 4; Deposition, p. 105-106; Exhibit IV - CIRT "Progress Notes" dated February 17, 2011 at Docket No. 73-5, p. 3). Quiñones also complained to Dr. Correa's nurse, who reassured her that the bleeding would pass. (Pl. Add. St., ¶ 3). "She was the one that told me, 'Girlfriend, calm down, this is going to pass.'" (Deposition p. 108 line 4-6). As per Dr. Correa's recommendation, Quiñones continued with the radiotherapy.

Around halfway through her treatment (February or March 2011), Quiñones told Dr. Jiménez's nurse that she had blood in her urine, and the nurse told her to speak with Dr. Correa because the symptoms were related to the radiotherapy and not with the chemotherapy. (Def. St., ¶ 12; Pl. St., ¶ 12). Quiñones then spoke with Dr. Correa about her symptoms and what Dr. Jiménez's nurse had told her. "I said to him, 'Correa, she says that they have nothing to do with the bleeding. …. that you have to do with the bleeding. That you are the ones who are burning me up.' … He continued to fill out the papers and he gave me more Percocet for the pain." (Def. St., ¶ 13; Deposition, p. 111-112).

On or about March, 2011, Quiñones told Dr. Correa that she wanted to stop the radiotherapy because of all the symptoms she was suffering (including blood in her urine, swollen and burnt vaginal and anal area with a pus-like substance that burned when she urinated, and discharge of bladder pieces) and he told her "[t]o not stop the radio. To continue until the 36[2] were completed. And I said I couldn't do it." (Def. St., ¶ 14; Deposition, p. 118-119, 135, 138). It is not clear from the record when Dr. Correa examined her vagina and buttocks, but Quiñones recalled seeing blood in his gloves. (Pl. Add. St., ¶ 6; Deposition p. 135). Quiñones would also discuss with other cancer patients in Dr. Correa's office, and separately with a family member who underwent radiotherapy and survived cancer, about their common symptoms. (Pl. Add. St., ¶ 9; Deposition p. 139-141). She continued with the radiotherapy treatment. Her last session was April 5, 2011, for a total of 35 radiotherapy sessions. (Exhibit 2 at Docket No. 70-3, p. 2). During her last visit with Dr. Jiménez, he told her that she was cancer-free. (Pl. Add. St., ¶ 10).

---

[2] The record reflects that she completed 35 radiotherapy sessions. (Exhibit at Docket No. 70-3, p. 2). In her deposition, Quiñones stated that Dr. Correa told her to complete 36 radiotherapy sessions. (Deposition, p. 118).

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)

5

By June, 2011, she knew that her symptoms and suffering were caused by the radiotherapy treatment. (Def. St., ¶ 15; Pl. St., ¶ 21). She did not consult with another doctor in Puerto Rico, and stated in deposition that she knew by herself that the radiotherapy provoked her ailments "[b]ecause it burned me. Every time they put me in the machine it burned me. I would tell them, that is [sic] burning me. [']Please don't give me that.'" (Deposition, p. 141).

She did not receive treatment during May, June, and July, and moved to mainland United States on July 28, 2011 to seek medical assistance because it was her understanding that she had not received adequate treatment in Puerto Rico, that she needed treatment for the conditions she now had, or she would die from the bleeding. (Def. St., ¶ 16-17; Pl. St., ¶ 16; Pl. Add. St., ¶ 11). On August 10, 2011, Quiñones visited the Holyoke Health Center ("Holyoke") in Massachusetts, and was seen by Dr. Barry Feingold ("Dr. Feingold") on a new-patient basis. She reported feeling pain in both her hips and upper legs. She did not have bowel or bladder incontinence, nor vaginal or anal discharge, and the record does not reflect that she still suffered from anal bleeding or swelling. She was alert and sat comfortably during examination. Dr. Feingold told her that they needed to follow-up for cervical cancer. (Pl. Add. St., ¶ 11). Dr. Feingold examined her again on August 24, 2011, and she notified him that she noticed fresh blood in post-diarrheal stool two days prior, and was instructed to notify Holyoke or go to the emergency room if her bleeding worsened, or if she experienced pain, weakness dizziness, or other problems. (Pl. Add. St., ¶ 13).

On September 13, 2011, Quiñones returned to Holyoke, and Dr. Jennifer Jurcsak ("Dr. Jurcsak") became her primary care physician. (Pl. St., ¶ 19-20; Pl. Add. St., ¶ 14). She told Dr. Jurcsak that she was burned in Puerto Rico, and was bleeding vaginally and anally. (Def. St., ¶ 18; Pl. St., ¶ 18). Dr. Jurcsak noted that she appeared well, in mild discomfort secondary to chronic hip pain, and planned for further evaluation concerning

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)
6

her bleeding and bowel movements, and schedule a colonoscopy. She assessed a likelihood of radiation proctitis. On September 20, 2011, Dr. Jurcsak scheduled a gyneco-oncology evaluation for the next day. (Pl. Add. St., ¶ 14). A CT Abdomen and Pelvis with contrast examination was perfomed on October 1, which revealed a small bowel wall thickening in her pelvis, with mesenteric edema and surrounding interloop fluid. The test indicated that those findings likely represented radiation enteritis. (Pl. Add. St., ¶ 16). On October 25, 2011, she returned to Dr. Jurcsak for further evaluation. The record reflects that she had a colonoscopy performed but no biopsy, and that she had an appointment scheduled for December with a liver specialist. She was also to follow-up with a gyneco-oncologyst and a Dr. Martinez for her cervical cancer and bleeding. (Pl. Add. St., ¶ 15). Dr. Jurcsak reviewed the CT results on October 27, and referred her to a urologist. (Pl. Add. St., ¶ 16). On November 17, Dr. Starkman ordered a cystoscopy with bladder biopsy, which was performed on November 30, and the results identified a radiation induced cystitis. Quiñones was informed of the results on December 12, 2011. (Pl. Add. St., ¶ 17).

On September 27, 2012, Quiñones's attorney sent a notification of claim letter to CIRT. (Def. St., ¶ 22). More than one year had expired from the time Quiñones requested that Dr. Correa stop treatment because she felt that it was "burning her up" on or around March 2011, but less than one year had expired from when Quiñones was informed that she had radiation induced cystitis on December 12, 2011.

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)

7

## DISCUSSION

Medical malpractice claims in Puerto Rico are governed by Articles 1802[3] and 1803[4] of the Puerto Rico Civil Code. Articles 1802 and 1803 carry a statute of limitations of one year[5] that begins to run once the aggrieved party has knowledge both that she has suffered a harm and who is responsible for it. *Ramirez-Ortiz v. Corporacion del Centro Cardiovascular de P.R. y del Caribe*, 994 F. Supp. 2d 218, 221 (D.P.R. 2014) (*citing P.R. Laws Ann. Tit. 31 § 5298*, *quoting Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 406 (1st Cir. 2009)). That is, the statute begins to run from the time the aggrieved party has actual knowledge of the injury and its origin or with due diligence would have sufficient information to permit suit. *Villarini-Garcia v. Hosp. del Maestro, Inc.*, 8 F.3d 81, 84 (1st Cir. 1993). "'Notice of the injury occurs when there exist some outward or physical signs through which the aggrieved party may become aware and realize that [she] has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed.'" *Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 18-19 (1st Cir. 2000) (*quoting Kaiser v. Armstrong World Indus, Inc.*, 872 F.2d 512, 516 (1st Cir. 1989) (internal quotations omitted). "Once a plaintiff is on 'notice of the injury,' the plaintiff may 'not wait for his [or her] injury to reach its final degree of development and postpone the running of the period of limitation according to his [or her] subjective appraisal and judgment.'" *Rodriguez-Suris v.*

---

[3] "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." *P.R. Laws Ann. Tit. 31§ 5141*.

[4] "The obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible." *P.R. Laws Ann. Tit. 31§ 5142*.

[5] "In Puerto Rico, the statute of limitations is a substantive and not a procedural matter." *Alejandro-Ortiz v. P.R. Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) (*citing Olmo v. Young & Rubicam of P.R. Inc.*, 100 P.R. Dec. 740, 742 (1981), 10 P.R. Offic. Trans. 965, 969 (1981)).

*Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997) (*quoting Ortiz v. Municipality of Orocovis*, 113 P.R. Dec. 484, 487, 13 P.R. Offic. Trans. 619, 622 (1982)).  That is, "[o]nce a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim she must pursue that claim with reasonable diligence, or risk being held to have relinquished her right to pursue it later, after the limitation period has run.  *Montesinos*, 123 F.3d at 16.

Once the statute is tolled, the limitations period runs anew for another full year.  *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 45 (1st Cir. 1990).  An aggrieved party may toll the statute by making an extrajudicial claim.  *P.R. Laws Ann. Tit. 31 § 5303*.  An extrajudicial claim tolls the statute if (1) the claim was made by the holder of the substantive right or her attorney, (2) it was addressed to the debtor, and (3) it demands the relief ultimately sought in the subsequent suit.  *Moran-Vega v. Cruz-Burgos*, 537 F.3d 14, 21 (1st Cir. 2008).

Here, CIRT and Admiral argue that plaintiffs' cause of action under Articles 1802 and 1803 is time-barred by the applicable one-year statute of limitations because Quiñones exerted an extrajudicial claim more than one year after she knew or should have known with due diligence of the damages caused by the defendants.  The parties present different dates of when the knowledge of the injury occurred.  The court must decide when the one-year statute began to run, and whether it was timely tolled.

Co-defendants CIRT and Admiral argue that Quiñones became aware of her cause of action at around her fourth radiotherapy session, on or before the end of March 2011, and that it is this date, and not December 2011, when she should have had knowledge of the medical malpractice.  They cite Quiñones's deposition testimony that she told Dr. Correa that treatment was "burning her up."  They also argue that she allowed her

condition to worsen by not seeking treatment after her radiation therapies ended in April 2011.

Plaintiffs responded that Quiñones found out that the post-radiatherapy symptoms she was experiencing were a whole other condition, radiation-induced cystitis, when she was informed of her cystoscopy with bladder biopsy test results on December 12, 2011. Taking her version as true, Quiñones, as holder of the substantive right, made an extrajudicial claim on September 17, 2012 through her attorney within the year allotted by the applicable statute, and it was addressed to CIRT and Dr. Correa, among others. It stated the damages she claims were caused to her by them, and informing of her intention to toll the statute and sue for damages for medical malpractice. (Docket No. 70-4). Having satisfied the requirements for an extrajudicial claim, the statute of limitations would be considered tolled for another full year effective September 17, 2012, and the complaint in the instant case would be considered timely filed on September 3, 2013.

For purposes of this motion for summary judgment, inferences must be drawn in Quiñones's favor. The injury here occurred somewhere between January and April, 2011. It is clear that Quiñones knew that the ailments she was suffering from were directly caused by the radiotherapy treatment, and that Dr. Correa was responsible for the treatment given. When the statute is tolled more than one year after the actual injury occurred, plaintiffs then bear the burden of proving that Quiñones did not have actual knowledge or imputed knowledge (knowledge acquired by due diligence) within the statutory period. *Santos-Espada v. Cancel-Lugo*, 312 F.3d 1, 4 (1st Cir. 2002). "If plaintiff fails to meet this burden, the statute of limitations will start to run from the day of the injury regardless of whether plaintiff has actual knowledge." *Vazquez-Morales v. Estado Libre Asociado de P.R.*, 967 F. Supp. 42, 47 (D.P.R. 1997) (*citing Fragoso de Conway v. Lopez*, 794 F. Supp. 49, 50 (D.P.R. 1992), aff'd, 991 F.2d 878 (1st Cir. 1993)).

When Quiñones met with Dr. Correa in February and told him she was bleeding, he instructed her to sit on ice, and continue with treatments. On another occasion, Dr. Correa's nurse told her that the bleeding would pass. During that time period, Quiñones told Dr. Jiménez's nurse about the burning sensation she was feeling, and the nurse told her that she should talk to Dr. Correa because those symptoms pertained to the radiotherapy treatment he was administering. In March, she asked Dr. Correa to stop the radiotherapy treatment because it burned her, and he told her to finish the treatment. She apparently followed his advice and finished the treatment in April. Additionally, Quiñones shared experiences with other similarly-situated patients, who also experienced symptoms during the radiotherapy.

Because her ailments persisted after treatment ended, she chose to leave Puerto Rico and seek treatment in Massachusetts at Holyoke. Her first visit there was August 2011. At first, the symptoms she had complained about during radiotherapy were not present, only pain in her hips and upper legs, but two weeks later, she began bleeding anally again. In September, Dr. Jurcsak assessed a likelihood of radiation proctitis, and ordered further tests. Quiñones received actual knowledge that her condition was in fact induced by the radiation treatment, radiation induced cystitis, on December 12, 2011, thus providing a causal nexus between her condition and Dr. Correa's conduct.

"Under federal case law, 'the question whether a plaintiff has exercised reasonable diligence is usually a jury question.'" *Villarini-Garcia*, 8 F.3d at 86 (*quoting Bohus v. Beloff*, 950 F.2d 919, 925 (3rd Cir. 1991). "[T]he question whether the plaintiff has exercised reasonable diligence is typically given to the jury, 'even where no raw facts are in dispute,' because 'the issue of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ.'" *Santos-Espada*, 312 F.3d at 4 (*quoting Villarini-Garcia*, 8 F.3d at 87). That is, "where a reasonable jury could find that the plaintiff lacked knowledge despite due

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)
11

diligence, the statute of limitations issue in a discovery-rule jurisdiction should not be withdrawn from the jury by summary judgment." *Villarini-Garcia*, 8 F.3d at 87.  A jury could reasonably find that Quiñones was diligent in further investigating her symptoms by meeting with other doctors, and hence her date of acquired knowledge was not earlier than the one she claims.

The statute of limitations can also be tolled "'if a plaintiff's suspicions that she may have been the victim of a tort are assuaged by the person who caused the injury.'" *Espada-Lugo*, 312 F.3d at 4 (*quoting Rodriguez-Suris*, 123 F.3d at 16).  Here, Dr. Correa and his staff promptly assured her that the side-effects would pass, and Dr. Correa urged her to continue treatment while taking care of the burning side-effects.  "As a matter of common sense, and Puerto Rico precedent, *see Geigel*, 315 P.R. Dec. at 245, 15 Off. Trans. at 329, she was entitled initially to rely on this prognosis from her doctor." *Villarini-Garcia*, 8 F.3d at 87.  A jury could also reasonably conclude that Quiñones was aware of the side effects, and questioning her side effects would not necessarily have triggered further inquiry as to whether she was overexposed to radiation.

"Finally, such tolling may be halted by further information that renders plaintiff's reliance on those assurances no longer reasonable, so that plaintiff then has an obligation of diligent investigation." *Espada-Lugo*, 312 F.3d at 4 (*citing Rodriguez-Suris*, 123 F.3d at 17).  Quiñones knew more than one year before she filed this complaint that she was suffering from a serious condition that started during her radiotherapy treatment, and continued upon its conclusion, and that Dr. Correa was responsible for it because he ordered and supervised her treatment.  From the facts in this case, a jury could conclude that Quiñones had reason to know or suspect that her symptoms appeared because she was administered a dosage higher than the recommended standard practice that would trigger an obligation to diligently investigate.  In the end, this is an issue that could be reasonably resolved by the jury in favor of either party.

Quiñones-Torres, *et al.* v. Radiation Oncology Group, PSC, *et al.*
Civil No. 13-1673 (BJM)
12

## CONCLUSION

For the foregoing reasons, the motion for summary judgment on plaintiffs' Article 1802 and 1803 claim as being time-barred is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of May, 2015.

                                                  *S/ Bruce J. McGiverin*
                                                  BRUCE J. MCGIVERIN
                                                  United States Magistrate Judge